UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
PETER T. DeVITTORIO, RALPH TANCREDI,      :
MICHAEL MARINELLI and EDWARD ARCE,
                                          :    07 Civ. 0812 (WCC)
                   Plaintiffs,
                                          :       **ECF CASE**

           - against -                    :

                                          :
DAVID HALL, individually, ANTHONY
MARRACCINI, individually, and the         :
TOWN/VILLAGE OF HARRISON, New York,
                                          :
                   Defendants.
- - - - - - - - - - - - - - - - - - - - X
STEPHEN M. CARPINIELLO, WILLIAM C.        :
DUFFELMEYER, MICHAEL WALTHER, PAUL
SPICONARDI, ARTHUR MARINELLI, STEVEN      :    07 Civ. 1956 (WCC)
HEISLER, SCOTT FORREST and JEFF NARDI,
                                          :       **ECF CASE**
                   Plaintiffs,
                                          :
           - against -                    :       **OPINION**
                                          :       **AND ORDER**
DAVID HALL, individually, ANTHONY
MARRACCINI, individually, and the         :
TOWN/VILLAGE OF HARRISON, New York,
                                          :
                   Defendants.
- - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                                   LOVETT & GOULD
                                   **Attorneys for Plaintiffs**
                                   222 Bloomingdale Road - Suite 305
                                   White Plains, New York 10605

JONATHAN LOVETT, ESQ.

     Of Counsel


                                   BOND SCHOENECK & KING PLLC
                                   **Attorneys for Defendants**
                                   1399 Franklin Avenue, Suite 200
                                   Garden City, New York 11530

MARK N. REINHARZ, ESQ.

     Of Counsel

**CONNER, Senior D.J.:**

Plaintiffs, Peter DeVittorio ("DeVittorio"), Michael Marinelli ("Marinelli"), Ralph Tancredi ("Tancredi") and Edward Arce ("Arce"), bring this action under 42 U.S.C. § 1983 alleging violations of their rights under the First, Fourth and Fourteenth Amendments of the United States Constitution and violations of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. § 2520). Defendants, David Hall ("Hall"), Anthony Marraccini ("Marraccini") and Town/Village of Harrison, New York (the "Town" or "Harrison") move to disqualify plaintiffs' counsel on the grounds that one of the defendants is a current client of plaintiffs' counsel, and plaintiffs' counsel has represented this defendant in prior substantially related matters. For the reasons stated below, defendants' motion is denied.

## BACKGROUND

Plaintiffs are police officers for the Town Police Department (the "Department"). Plaintiffs DeVittorio and Marinelli are members of the Police Benevolent Association ("PBA"); at the time relevant to this lawsuit Tancredi was the PBA President and Arce was the PBA Sergeant-At-Arms. (Complt. ¶¶ 3-6.) Plaintiffs allege that Hall, the Town's Chief of Police, and Marraccini, a Captain in the Department, installed a closed-circuit television camera and audio recorder in the men's locker room at Police Headquarters. (*Id*. ¶¶ 7-10.) They claim that defendants used the equipment to tape officers in various states of undress, and record and listen to conversations regarding alleged departmental corruption and personal information regarding their objectives as members and officers of the PBA. (*Id*. ¶ 11.)

On December 24, 2005 Marinelli discovered the camera and reported it to Sergeant Edward

Lucas ("Lucas"); Marinelli reported it to Sergeant Vincent Musollino ("Musollino") on December 25. (*Id*. ¶¶ 12-13.) On December 26, Hall and Tancredi were notified about the discovery of the camera, and Hall announced that he would fire whoever did it and proceeded to remove the wiring. (*Id*. ¶¶ 14-15.) Tancredi and PBA attorney Richard Bunyan ("Bunyan") demanded in writing on December 27 that Hall and Marraccini safeguard all evidence pertaining to the camera. (*Id*. ¶ 18.) Plaintiffs claim that when Hall was advised the PBA intended to report the incident he threatened to "turn Anthony [Marraccini] loose on them." (*Id*. ¶ 19.) They also allege that Marraccini made statements indicating he was responsible for installing the camera. (*Id*. ¶ 20.)

Plaintiffs Marinelli and Tancredi claim that in retaliation for their reporting the camera and expressing concerns as PBA members, defendants gave them assignments usually given to junior members of the Department, and Marraccini gave a permanent investigative assignment to another officer after proposing earlier that it go to Marinelli. (*Id*. ¶¶ 21-23.) In a February 2006 meeting, in which DeVittorio expressed his concerns about the incident, the PBA adopted a resolution to report the camera to an outside law enforcement agency. (*Id*. ¶¶ 24-25.) Plaintiffs claim that in March or April 2006 Marraccini made false accusations that Tancredi misspent PBA money and threatened disciplinary action against PBA members if they refused to report Tancredi. (*Id*. ¶ 26.) At Marraccini's request the District Attorney's Office inquired into the expenditures and concluded there was no criminal wrongdoing. (*Id*.) Plaintiffs also claim that Marraccini influenced members of the PBA to fire Bunyan as counsel and to run as candidates on his "slate" to take control of the PBA, approached Arce and told him to "get with the right [] team" and stop "stirring the pot," and that officers who supported Marraccini were assigned better positions and officers who did not were removed from positions. (*Id*. ¶¶ 30-33.)

Defendants, represented by Bond, Schoeneck & King, PLLC ("BSK"), move to disqualify plaintiffs' counsel Lovett & Gould, LLP ("L&G"). Defendants make this motion on the grounds that Marraccini is a current client of L&G and that L&G previously represented Marraccini in a number of substantially related matters. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 1.)

The relationship between Marraccini and L&G began in January 1992 when Marraccini was brought up on disciplinary charges for alleged violations of the Department's rules and regulations, which could have led to his termination. (*Id.* at 2.) The specific allegations included failure to take narcotic evidence to the forensic lab on the next business day after an arrest, disobeying a direct order, transporting an unauthorized civilian while on duty, and conspiring with others to disseminate information from Department records. (Marraccini Aff., Ex. 1.) Marraccini believed the charges were brought in retaliation for supporting his brother in an election for Town Mayor/Supervisor. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 2.) He retained L&G to represent him in the disciplinary proceedings, and Jonathon Lovett ("Lovett") handled the matter. The parties differ in their recollection of events after Lovett was retained. According to Marraccini, he and Lovett met numerous times to discuss and prepare for the hearing, and Lovett attended the five-day hearing and received "tens of thousands of dollars" in fees for representing him. (*Id.*) The charges were never established and no finding of misconduct was entered against Marraccini. (*Id.* at 3.) Lovett states that the charges "distilled to precious little" and did not require him to meet with Marraccini for many hours to prepare. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 2.) Additionally, the hearing "occurred over the course of a few hours during the evenings on several dates," and Marraccini did not pay tens of thousands of dollars in fees. (*Id.*)

In August 1992, Lovett filed a federal civil rights lawsuit under 42 U.S.C. § 1983 on behalf

of Marraccini against the Town and members of the Department, alleging that the disciplinary charges and the fact that Marraccini was passed over for promotion to Sergeant were in retaliation for Marraccini exercising his First Amendment right to support his brother's campaign. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 3; Marraccini Aff., Ex. 3.) Discovery of the matter ensued, involving depositions and a motion to disqualify the law firm representing defendants for a conflict of interest. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 3-4.) Marraccini spent numerous hours with Lovett and disclosed confidential and privileged information. (*Id.* at 4.) The matter proceeded to trial but a settlement was reached before conclusion of the trial. (*Id.*) Lovett also represented Officer Brendan Murphy ("Murphy") in a related First Amendment retaliation action filed about the same time as Marraccini's action. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 2.) Murphy claimed to have been the subject of retaliation for having helped Marraccini in support of his brother's campaign. (*Id.* at 2-3.) Lovett states that whatever Marraccini disclosed to him in connection with the suit, he disclosed in the presence of Murphy because he, Marraccini and Murphy met to discuss facts and "jointly prosecute[] their respective claims." (*Id.* at 3.) Lovett adds that there was no confidential information exchanged because of Murphy's presence and the "very simple factual premise" of the case. (*Id.*)

In 1996 Marraccini received what he considered to be a threatening letter from the PBA. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 4.) Lovett wrote to the PBA on behalf of his "client," and stated that legal action would ensue if the PBA took any retaliatory action against Marraccini. (*Id.* at 4-5; Marraccini Aff., Ex. 5.) Lovett states that there was no attorney-client relationship in the period between the 1992 action and the writing of this letter. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 3-4.) He alleges that in connection with this letter there

were "no communications between Marraccini and [himself] with respect to anything whatsoever of substance." (*Id.* at 4.)

In November 1997 Lovett filed another federal civil rights lawsuit under 42 U.S.C. § 1983 on behalf of Marraccini, alleging that defendant Sam Fanelli ("Fanelli") and several Town Board members violated Marraccini's First Amendment rights. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 5; Marraccini Aff., Ex. 6.) The complaint alleged that Fanelli, a private citizen, cut Marraccini off as he was driving around trying to determine who was destroying his brother's campaign signs prior to the November 1997 election. (*Id.*) The complaint also alleges that Marraccini instructed Fanelli to pull over and reached his arm in Fanelli's car at which point Fanelli began to drive away. (Marraccini Aff., Ex. 6.) When Fanelli stopped the vehicle, Marraccini radioed for police backup. (*Id.*) Fanelli subsequently claimed that Marraccini assaulted him. (*Id.*) Marraccini alleged that the incident was a set up by Fanelli and the Town Board members to discredit Marraccini and his brother. The claims were dismissed in 1999. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 5.) Marraccini states he had several attorney-client conversations with Lovett as a result of this matter. (*Id.*) Lovett states that, "given the simplicity of the factual premise" he and Marraccini only had several conversations in which no information was exchanged that "has or potentially has and/or theoretically has anything whatsoever to do with the instant litigation." (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 4.)

In November 1998 Fanelli filed a federal civil rights suit against Marraccini, the Department and other officers alleging that defendants violated his First and Fourth Amendment rights when they searched and detained him in conjunction with the events set forth in Marraccini's 1997 suit against Fanelli. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 6; Marraccini Aff., Ex. 7.) The

defendants in that case were represented by Friedman & Harfenist, but Marraccini requested that Lovett represent him. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 6.) In February 1999 Lovett filed a motion to disqualify Friedman & Harfenist as counsel for Marraccini and substitute L&G. (*Id.* at 6-7.) The motion was denied and the matter eventually settled. (*Id.*)

Marraccini claims to have continued a relationship with Lovett and his firm after this, discussing confidential attorney-client matters on numerous occasions including a lunch at Mulino's "a few years ago." (*Id.* at 7; Marraccini Aff. ¶ 22.) Several times Lovett told Marraccini: "I will always be your lawyer, Anthony." (*Id.*) Lovett also called Marraccini at work and home for personal and business matters and provided him with a business card including his personal cell and home phone numbers. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 7.) Marraccini at no time consented to Lovett's representation of plaintiffs in this matter. (*Id.* at 8.)

Lovett strongly opposes Marraccini's assertion that he is a current client of L&G. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 4.) Neither Lovett nor the firm currently represent Marraccini in connection with any matter, and they have not represented him during the past eight years. (*Id.* at 4-5.) Lovett claims the lunch at Mulino's happened approximately eight years ago and that the only topics of conversation were the restaurant and the quality of the food. (*Id.* at 5.) Lovett asserts that he has spoken to Marraccini occasionally in the past few years but "not with respect to anything whatsoever that would in any way possibly be covered by the attorney-client privilege." (*Id.*) He also denies stating that he would always be Marraccini's lawyer. (*Id.* at 5-6.) Additionally, the business card Marraccini has is eight-years-old and does not reflect L&G's current location. (*Id.* at 6.)

## ANALYSIS

In this Circuit, it is within the discretion of the district court to disqualify an attorney. *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980) (collecting cases), *vacated on other grounds*, 450 U.S. 903 (1981); *Decora Inc. v. DW Wallcovering*, Inc., 899 F. Supp. 132, 135 (S.D.N.Y. 1995). Motions to disqualify opposing counsel are viewed with disfavor because they "'are often interposed for tactical reasons,' and [] 'even when made in the best of faith, such motions inevitably cause delay.'" *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983) (citations omitted); *see also Decora*, 899 F. Supp. at 135.

The court's goal is to maintain a balance between a party's right to preferred counsel and the need to preserve the integrity of the adversary process. To that end, the Second Circuit is loath to separate a client from his chosen attorney, but any doubts should be resolved in favor of disqualification. *Cheng*, 631 F.2d at 1059; *Planning & Control, Inc. v. MTS Group, Inc.,* 1992 WL 51569, at *1 (S.D.N.Y. Mar. 11, 1992) (Conner, J.). However, the party seeking disqualification must carry a heavy burden and meet a high standard of proof before disqualification will be granted. *See Evans*, 715 F.2d at 791; *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *Decora*, 899 F. Supp. at 136.

The Second Circuit recognizes that the American Bar Association Code of Professional Responsibility provides appropriate guidelines for attorney behavior. *Evans*, 715 F.2d at 791; *Decora*, 899 F. Supp. at 135. There are two situations the Circuit considers that require disqualification: "(1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a

position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage." *Bd. of Educ. of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations and footnotes omitted); *Rella v. N. Atl. Marine Ltd.*, 2004 U.S. Dist. LEXIS 22309, at *12-13 (S.D.N.Y. Nov. 3, 2004) ("The New York Code of Professional Responsibility specifically provides that 'a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure: (1) Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.'") (quoting DR 5-108(A)(1), 22 NYCRR1200.27(a)(1)); *Bennett Silvershein Assoc. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (citing Model Rules prohibition against attorney representation of an opponent in subsequent substantially related matter because "an attorney may not knowingly reveal a client confidence if to do so would disadvantage that client"). "An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *Rella*, 2004 U.S. Dist. LEXIS 22309, at *14 (citing Code of Professional Responsibility).

In cases of concurrent representation, the Second Circuit has ruled "it is 'prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." *Hempstead Video,* 409 F.3d at 133 (citing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). "The attorney 'must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" *Id*.

Under Canon 4 of the Model Code, in cases of subsequent representation, "an attorney may

be disqualified from representing a client in a particular case if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *Evans*, 715 F.2d at 791 (citing *Cheng*, 631 F.2d at 1055-56); *see also Hempstead Video,* 409 F.3d at 133; *Ello v. Singh*, 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006); *Rella,* 2004 U.S. Dist. LEXIS 22309, at *13-14; *Decora*, 899 F. Supp. at 136; *Planning & Control,* 1992 WL 51569, at *2.

"Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification." *Decora,* 899 F. Supp. at 136 (quoting *Gov't of India*, 569 F.2d at 739-40) (additional citations omitted). "A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Agilent Techs., Inc. v. Micromuse, Inc.*, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004) (citation omitted); *see Bennett*, 776 F. Supp. at 804 (finding that a prior consultation between a lawyer and former client is sufficiently related to the current case to justify disqualification of the attorney if "information the client disclosed in [the] earlier consultation is useful in the later case," that is, if it provides "some advantage not otherwise available . . . even if that advantage goes only to background matters"); *Twin Labs., Inc. v. Weider Heath & Fitness*, 1989 U.S. Dist. LEXIS 4693, at *12 (S.D.N.Y. May 4, 1989) ("In determining whether this case involves the same matter as the FTC case, the most important consideration is not whether the two actions rely on the same legal theory, but whether the facts necessary to support the two suits are sufficiently similar."); *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985) ("The standard

9

applied in each case is readily discernible: if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same, then there is a 'substantial relationship' between the representations for purposes of a disqualification motion. . . . More general legal representation can be relevant to a later litigation, but only if the later litigation fairly puts in issue the entire background of the movant.").

The party seeking disqualification "need show no more than that the matters embraced within the pending suit . . . are substantially related to the matters or cause of action wherein the attorney previously represented him. . . . The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." *Cheng*, 631 F.2d at 1056 (quoting *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953)); *see Gov't of India*, 569 F.2d at 740; *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 233-34 (S.D.N.Y. 1992). This presumption arises in order to avoid a direct inquiry into confidential information because "[s]uch an inquiry would . . . put the movant to the choice of either revealing its confidences in order to prevail on the motion or else refraining from moving to disqualify, thereby running the risk that its adversary will use its confidences against it in the litigation." *U.S. Football League*, 605 F. Supp. at 1461 (citations omitted).

In determining which of the tests apply, the Court must first examine the relationship to determine whether it is concurrent or successive.

## I.     Concurrent Representation

Defendants assert that Marraccini is a current client of L&G because they have a relationship that is not "limited to specific instances of representation . . . but has been cultivated by Mr. Lovett

and has grown into [a] general attorney-client relationship." (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 22.) This is evidenced by discussions of confidential matters "[o]ver the years," lunch, phone calls, the business card, and assurances by Lovett that Marraccini could contact him at any time about legal problems and that he would always be his lawyer. (*Id.* at 22-23.) Defendants allege that Marraccini reasonably considers himself a current client of L&G and attempted to contact L&G when he first learned of the current lawsuit. (*Id.* at 23.) Plaintiffs allege that the business card is out-dated, Lovett did not tell Marraccini he would always be his lawyer and has not represented him in the past eight years. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 24.)

> There is no single, well-defined test used to determine whether an attorney-client relationship exists; rather, a court must weigh a number of factors, including among others: (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; and (3) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

*Ello*, 2006 WL 2270871, at *3 (internal quotations and citations omitted) (finding plaintiff's subjective belief that he was personally represented by the firm that represented the union where he was employed was unreasonable). As there is no retainer agreement in effect or active matter in which L&G represents Marraccini, the Court must decide if Marraccini's stated belief that he is a current client of L&G is reasonable. *See Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) (noting that "although the so-called client's subjective belief can be considered by the court, this belief is not sufficient to establish an attorney-client relationship," and finding plaintiff failed to demonstrate an attorney-client relationship because there was no written contract, no informal relationship in which counsel performed legal services gratuitously, and the facts did not support

plaintiff's contention that he believed counsel was his lawyer and that information given would be kept confidential) (internal citations omitted).

Although Marraccini alleges he had confidential conversations with Lovett over the years, he does not allege that those conversations took place in the context of his seeking legal advice or services from Lovett. Since it has been at least eight years since Lovett represented Marraccini in a legal capacity, we do not think it is reasonable for Marraccini to believe he is a current client of L&G. An obsolete business card with a personal phone number and reassurances by Lovett that he would always be his lawyer are not enough to convince us otherwise. "The fact that an individual has previously been represented by an attorney does not mean that that attorney represents that person for any or all subsequent, unrelated . . . matters." *Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F. Supp. 360, 367 (S.D.N.Y. 1992) (internal quotation omitted); *see Catizone v. Wolff*, 71 F. Supp. 2d 365, 371 (S.D.N.Y 1999) (finding plaintiff's belief that counsel represented him was unreasonable because counsel represented him personally on only a handful of securities matters, and the most recent such representation was more than four years before the unrelated transactions at issue). Although Marraccini's call to Lovett when he was served in this action may have indicated that he wanted L&G to represent him in the action, that does not add anything to the reasonableness of his belief that he and Lovett have a current attorney-client relationship.

Because we do not find Marraccini's belief that he is a current client of L&G reasonable, we must analyze this motion using the disqualification test for successive representation.

## II.     Successive Representation

Defendants have established the first requirement for disqualification because it is undisputed

that Marraccini was a former client of Lovett, who is currently representing plaintiffs in this action. Defendants argue that the second requirement is also met because there is a substantial relationship between the prior matters, in which Lovett represented Marraccini, and the present lawsuit. Defendants maintain that "both involve serious allegations of police misconduct and First Amendment violations." (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 15.)

Defendants rely on *Fernandez v. City of New York*, 2000 WL 297175 (S.D.N.Y. March 21, 2000) for support. (*Id*.) In *Fernandez*, the plaintiff alleged that the defendants maliciously prosecuted him for criminal possession of a controlled substance, and that defendant Officer McVeigh testified falsely against him in the criminal proceedings. 2000 WL 297175, at *1. Defendants moved to disqualify plaintiff's counsel on the ground that the firm previously represented McVeigh. *Id*. The court granted the motion, finding that although the two matters involved different subjects, both involved allegations of serious misconduct and therefore a "reasonable likelihood exist[ed]" that the earlier representation for a year and a half resulted in the acquisition of confidential information that could be useful in the case. *Id*.

Defendants assert that the present litigation involves police misconduct, installing a video camera in the locker room of the Department, and related claims of retaliation by Marraccini and Hall against members of the PBA for exercising their First Amendment rights. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 16.) Lovett's 1992 representation of Marraccini was in defense of disciplinary charges brought against him for alleged misconduct on the job. The lawsuit that followed claimed that those charges were brought in retaliation for Marraccini's exercise of his First Amendment rights when he supported his brother's political campaign. The second lawsuit also alleged violations of Marraccini's First Amendment rights through an alleged conspiracy by

several Town Board members and a civilian to make accusations of professional misconduct against him in retaliation for his support of his brother's campaign. Additionally, in 1996 Lovett wrote a letter on behalf of Marraccini when Marraccini believed the PBA was threatening him with retaliation for exercising his First Amendment rights. Defendants claim that because the allegations are similar, Lovett gained information from Marraccini that provides Lovett and plaintiffs with an advantage in the present litigation.

Stripped of their many insulting aspersions against defendants and their attorney, plaintiffs' arguments boil down to these: (1) the 1992 disciplinary charges were "frivolous" and did not amount to serious allegations of police misconduct; (2) the 1992 lawsuit did not involve serious police misconduct because it was based on the frivolous 1992 disciplinary charges; and (3) the First Amendment retaliation was aimed at Marraccini by members of the Town Board. (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 15.) Plaintiffs distinguish *Fernandez* on the basis that Lovett has not represented Marraccini for more than eight years, the disciplinary charges against Marraccini were not serious but frivolous and made to retaliate against him, and there is no "reasonable likelihood" that Lovett's representation of Marraccini resulted in the acquisition of confidential information useful in the current litigation. Additionally, plaintiffs assert that the former and current actions are not substantially related because the current litigation does not involve claims that Hall and Marraccini violated police department rules or regulations, but rather that they violated federal and state law.

Although the issues here are not identical,[1] they need not be in order to justify

---

[1] *See DeFazio v. Wallis*, 459 F. Supp. 2d 159, 164 (E.D.N.Y. 2006) (determining issue in the underlying case was whether defendant induced investors to invest by lying to them about his educational and employment background and issue in prior representation also involved an

disqualification. *See Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, 2007 WL 2593000, at *6 (S.D.N.Y. Sept. 07, 2007) (finding substantial relationship where issues central to the previous claim would also be implicated in the current claim because it concerned the same construction project, even if the principal focus of the earlier claim did not relate to the current plaintiff). If it is possible that Lovett obtained substantially relevant information in his previous representations that could be used to plaintiffs' advantage and defendants' disadvantage in the current litigation, then he and his firm should be disqualified from representing plaintiffs. It is true, despite plaintiffs' assertion to the contrary, that both this case and Marraccini's prior lawsuit allege police misconduct and related retaliation claims. However, the fact that alleged misconduct underlies both lawsuits is not enough. *See Cmty. Programs of Westchester Jewish Cmty. Servs. v. City of Mount Vernon*, 2007 WL 1484037, at *1 (S.D.N.Y. May 21, 2007) ("The Court acknowledges that the prior case and the present case share a broad similarity in that both generally involve zoning issues. However, apart from conclusory allegations, defendants proffer no evidence that the material facts in the prior litigation are the same as those involved in the present case."). Here Marraccini is alleged to have illegally recorded private conversations in order to spy on PBA activity. In the prior controversies Marraccini was alleged to have violated departmental rules and policies concerning his conduct as a police officer. It is hard to imagine any information Lovett might have obtained in those prior situations that would be relevant to the current claims that Marraccini and Hall recorded the conversations of officers to obtain personal information. Particularly since, as plaintiffs repeatedly

_____

alleged misrepresentation by defendant of his educational and employment background); *Gov't of India*, 569 F.2d at 739 (finding the fraud issue in the prior action required counsel to conduct confidential inquiries as to defendant's loading procedures and the "very same information necessarily was the cornerstone upon which [plaintiff's] fraud claim against [defendant] in the instant case was based").

assert, the instant action does not involve alleged misconduct on their part, Marraccini's prior alleged violation of departmental rules is irrelevant to their claims.

Additionally, in the current action it is alleged that Marraccini retaliated against PBA members for protesting about the surveillance camera, while in the prior lawsuit Marraccini alleged that members of the Department and the Town, at various times, retaliated against him for supporting his brother's political campaign. Allegations of retaliation underlie both claims; however, the common issue of retaliation is not enough. In the prior case, the alleged retaliation was aimed at Marraccini for expressing his political beliefs. In the present case, Marraccini allegedly retaliated against plaintiffs because he resented their disclosure of his use of the camera. We fail to see what, if any, relevant information Lovett could have obtained in the prior matters that would be relevant to the issue of whether Marracini and Hall engaged in retaliatory acts against these officers for reporting the camera. Although defendants are not required to disclose the confidential information provided to Lovett in his prior representations, they have not provided us with even a hint as to how the prior confidences could be relevant or might be used to their disadvantage. *See Planning & Control*, 1992 WL 51569, at *3-4 (denying motion to disqualify counsel because defendants' argument that there was a close relationship between the manuals at issue in the case and the software at issue in the prior case, since the manuals were derived from the software and software-generated material is copied in the manual, was "very weak").

Defendants also argue that "even if the information previously discussed merely provides Mr. Lovett with background knowledge as to the workings of the Harrison Police Department" it places defendants at a disadvantage, particularly because Marraccini's alleged misconduct is at the heart of the matter. (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 18.) Plaintiffs counter

that background information about the Department in 1992 is not relevant to the current practices in 2007. The court in *Bennett* found that disqualification is justified if information disclosed earlier is useful in the later case, providing some advantage not otherwise available even if the advantage goes only to background matters. 776 F. Supp. at 804. However, in *Agilent*, the court determined that prior general business representation on matters unrelated to the lawsuit at issue did not meet the high burden of establishing a conflict. 2004 WL 2346152, at *11 ("It has not been shown that [the law firm] gave [defendants] advice on the validity of the patents in suit . . . . All that has been established is that [the firm] advised [defendants] on corporate governance issues, employment matters, original equipment manufacturer [] agreements, patent and trademark filings, and financing instruments."). *But see Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 31 (E.D.N.Y. 1996) (finding disqualification justified where the same general issues of employment policies were central to the current and previous actions and both actions involved the same defendant and plaintiff); *Jacobs v. Kotkin*, 1992 WL 26179, at *3 (S.D.N.Y. Feb. 4, 1992) (disqualifying defendant's counsel in action to recover money due on a loan transaction because he had formerly represented plaintiff, and during that time they had discussed at least one of plaintiff's many loan transactions and some confidential information).

It is possible that Marraccini provided Lovett with background material about the Department in his prior lawsuits; however, to the extent that information is relevant in the present action it would presumably be discoverable. Moreover, Department personnel, policies and practices often change, as evidenced by the fact that Marraccini is now a Captain in the Department. We do not see how background information provided eight years ago in litigation involving unrelated claims could disadvantage defendants or be useful to plaintiffs by giving them an otherwise unavailable

advantage. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 2006 WL 2013471, at \*8 (E.D.N.Y. July 18, 2006) (plaintiffs did not meet burden to disqualify defendants' attorney because even if plaintiffs disclosed sensitive, confidential information during prior discussions with counsel while incorporating the new entity, plaintiffs did not show how the information could be used to plaintiffs' disadvantage in this case); *Dominica Mgmt., Inc. v. Am. Univ. of Antigua Coll. of Med.*, 2005 WL 1423338, at \*5 (S.D.N.Y. June 15, 2005) (finding there was "no clear identity of issues between this case and the cases in which [counsel] previously defended [plaintiff]," and to the extent counsel became aware of plaintiff's general litigation strategies during his prior representations "it does not appear that [counsel] will have any special insight into how [plaintiff] will prosecute this case since there have been at least two changes in [] ownership" and other management changes); *compare Ullrich*, 809 F. Supp. at 234 (finding disqualification of plaintiff's attorney justified where he represented defendants for nearly 20 years rendering legal advice and litigation services on matters "very closely related" to the issues in the current case).

Additionally, defendants point out that Lovett may be cross-examining Marraccini about his conduct, and courts have found that attorneys who cross-examine former clients have divided loyalties. (Def. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 18-19.) Plaintiffs state that the suggestion by defendants that Lovett's brief representation of Marraccini would provide insight on discovery, witnesses and lines of attack is "downright silly." (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 20.) We agree with defendants that it is "reasonable to conclude that, as a result of these privileged communications, counsel gained knowledge of Mr. Marraccini's employment with the Harrison Police Department, his disciplinary history, [and] the contents of his personnel file." (Defs. Reply Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 6.) We also take

note of defendants' observation that plaintiffs have already questioned the credibility of Marraccini in their opposition papers.[2]  Defendants are understandably concerned about plaintiffs' counsel using unrelated past information about Marraccini in cross-examination.  *See United States v. Galestro*, 2006 U.S. Dist. LEXIS 57416, at *13 (E.D.N.Y. Aug. 16, 2006) (disqualifying defendant's attorney who formerly represented a key witness for the government because "it is clear that during that relationship [the witness] discussed his culpability for *the identical crimes* that he now intends to testify about as a cooperating witness [] against [defendant]") (emphasis in original).  However, the Court can and will address the issue if plaintiffs' counsel improperly attempts to use any such confidentially acquired background information at trial.

## III.  <u>Canon 9</u>

Defendants also move to disqualify L&G under Canon 9.  Canon 9 requires that attorneys "avoid not only the fact, but even the appearance of professional impropriety." *Planning & Control*, 1992 WL 51569 at *4.  In this Circuit, disqualification under Canon 9 is rarely granted if neither Canon 4 nor Canon 5 is implicated.  *Id.*

> [W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the

---

[2] Plaintiffs' papers employ many pejorative terms challenging both defendants' character and contentions, including such words and phrases as: "Marraccini's false sworn affidavit"; "movants disingenuously contend"; "self-delusional"; "absurd"; and "silly." (Pls. Mem. Opp. Mot. to Disqualify Plaintiffs' Counsel at 6, 18, 20, 22.) Almost an entire page of the opposition papers is dedicated to an imaginary conversation between defendants' counsel and Marraccini, in which plaintiffs suggest defendants' counsel attempted to convince Marraccini to fabricate his affidavit.  (*Id.* at 23.)  The court finds these accusations reveal more about Lovett's personal style than Marraccini's credibility.  Indeed plaintiffs do not provide any factual basis for their extravagant and unbecoming attack on Marraccini.

> court's confidence in the vigor of the attorney's representation of his client,
> or more commonly (2) where the attorney is at least potentially in a position
> to use privileged information concerning the other side through prior
> representation, for example, in violation of Canons 4 and 9, thus giving his
> present client an unfair advantage. . . . But in other kinds of cases, we have
> shown considerable reluctance to disqualify attorneys despite misgivings
> about the attorney's conduct.

*Kempner v. Oppenheimer & Co.*, 662 F. Supp. 1271, 1280 (S.D.N.Y. 1987) (citing *Nyquist*, 590 F.2d

at 1246); *Kubin*, 801 F. Supp. at 1116 ("As the Court holds that [the law firm] is not subject to

disqualification based on any other Canon, the Court will not consider disqualifying [the law firm]

solely on Canon 9 grounds."); *Bennett*, 776 F. Supp. at 806 ("If the only 'appearance of impropriety'

is a violation of Canon 4 that has already been found devoid of substance, it would be downright

perverse to hold that what has been held not to exist nonetheless 'appears.'").

Defendants rely on *Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.* to

support the notion that disqualification on the basis of an appearance of impropriety is warranted,

particularly to avoid tainting the public and private view of the legal profession. 53 F. Supp. 2d 338,

345 (E.D.N.Y. 1999). (Defs. Mem. Supp. Mot. to Disqualify Plaintiffs' Counsel at 24.) However,

even in that case, the court recognized that "[o]nly in rare cases is disqualification for the mere

appearance of impropriety desirable." *Blue Cross & Blue Shield of N.J.*, 53 F. Supp. 2d at 346

(internal citations omitted). The court determined that the case was such a rare exception because

"[t]he health representatives of tens of millions of people are involved in th[e] case, creating a

tension between individual justice and mass litigation. Courts must be particularly sensitive to the

feelings of lay people about what constitutes justice in these mass cases that are widely discussed."

*Id*. at 347. We do not see any reason to find this case to be one of the rare ones warranting

disqualification for the mere appearance of impropriety. Although we are sensitive to defendants'

concerns in allowing L&G now to represent plaintiffs against Marraccini after representing Marraccini in a number of prior matters involving police misconduct and related retaliation, it is not enough to meet the rigorous standard for disqualification established in the Second Circuit.

## CONCLUSION

For all the foregoing reasons, the Court denies defendants' motion to disqualify plaintiffs' counsel.

SO ORDERED.

Dated: White Plains, New York
        December 12, 2007

_Sr. United States District Judge_